# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SONYA W. PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-533-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sonya W. Price requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the most recent administrative hearing (Tr. 45). She has a high school education and has worked as a home health aide (Tr. 46, 220). The claimant alleges that she has been unable to work since September 15, 2010, due to pseudogout, arthritis, bursitis, anxiety, and depression (Tr. 384).

## Procedural History

On September 15, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 314-18). Her application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 30, 2013 (Tr. 81-91). The Appeals Council denied review, but the claimant appealed to this Court and the case was remanded on July 6, 2015, at the request of the Commissioner and pursuant to the sixth sentence of 42 U.S.C. §405(g) for consideration of evidence from Carl Albert Indian Hospital dated October 6, 2011, through February 9, 2012 (Tr. 99-101). On remand, ALJ Larry D. Shepherd conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated January 26, 2017 (Tr. 11-28). The Appeals Council denied review, so the ALJ's January 2017 written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that through the date last insured, the claimant had the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.,* she could lift and carry ten pounds occasionally and less than ten pounds frequently; sit for about six hours in an eight-hour workday; stand and walk for at least two hours in an eight-hour workday; frequently handle and finger; and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, and reach overhead; but could never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme heat, dusts, fumes, gases, odors, and poor ventilation (Tr. 18). Due to psychologically-based limitations, the ALJ found the claimant could understand, remember, and carry out simple, routine, and repetitive tasks; relate to supervisors and coworkers on a superficial work basis; and respond in an appropriate manner to usual work situations; but could have no contact with the general public (Tr. 18). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled through December 31, 2014, the date last insured, because there was work she could perform in the national economy, *e. g.*, address clerk, document preparer, and product inspector (Tr. 26-28).

## Review

The claimant's sole contention of error is that the ALJ erred in evaluating her subjective reports of pain. The Court finds this contention unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, osteoarthritis, bursitis, right foot disorder, obstructive sleep apnea, chronic obstructive pulmonary disease, asthma, hypertension, peripheral edema, rheumatoid arthritis, diabetes mellitus, fibromyalgia, morbid obesity, depression, and generalized anxiety disorder with panic attacks, but that her hearing loss was nonsevere (Tr. 14). The relevant medical record reveals that the claimant regularly consulted with family practice providers at Chickasaw Nation Medical Center between January 2011 and January 2015 for joint pain in her hands, right shoulder, knees, and feet (Tr. 551-59, 828-905). The various assessments relevant to her disability claim included shoulder pain, arthralgias, osteoarthritis of the right and left knee, rheumatoid arthritis, rotator cuff injury to right shoulder, and obesity. Her treatment consisted largely of medication management, although she received steroid injections in January 2012, April 2012, July 2012, and October 2014 (Tr. 836, 886-87, 898). After medication modifications due to side effects in February 2012, April 2012, and November 2012, the claimant generally reported that her medications effectively treated her pain through November 2014, and she reported no pain or discomfort in April 2013, minimal pain in August 2013, morning stiffness and pain in her hands in May 2014, and no pain or discomfort in September 2014 (Tr. 887, 892, 879, 865, 862, 856, 847, 837, 830).

Dr. Cooper performed a consultative physical examination of the claimant on November 12, 2011 (Tr. 613-20). Dr. Cooper found full range of motion with pain in the claimant's right shoulder, hips, knees, ankles, cervical spine, and lumbar spine (Tr. 615-20). Dr. Cooper found tenderness to palpation in her neck, upper back, and lower back

(Tr. 615). He noted no point tenderness, and no edema in her hands, knees, or pretibial area (Tr. 615). The claimant's knees showed no effusion and were stable in all range of motion exercises (Tr. 615). Dr. Cooper noted the claimant presented with a cane that she sometimes used to reduce the pain in her hips and low back (Tr. 616). He indicated that the claimant's gait appeared safe and stable without the cane, but was very slow with short steps and no limp (Tr. 616). Dr. Cooper assessed the claimant with, *inter alia*, osteoarthritis, peripheral edema, and bursitis (Tr. 616).

On December 27, 2012, the claimant presented to Dr. John Charboneau, an orthopedist, for pain in her right shoulder that had been present since she experienced a fall in April 2012 (Tr. 700-01). On examination, he found the claimant had painful arc of motion above her chest, point tenderness over the greater tuberosity region, and mild crepitus with movement (Tr. 700). He reviewed an MRI of the claimant's right shoulder conducted in November 2012, and noted it revealed a full thickness rotator cuff tear involving the supraspinus tendon (Tr. 700). On January 1, 2013, the claimant underwent a right shoulder arthroscopy (Tr. 695-96). Thereafter, the claimant attended two physical therapy sessions and reported that her pain was significantly reduced (Tr. 867-72). At a follow-up appointment on February 14, 2013, the claimant reported intermittent right shoulder pain (Tr. 690). Physician Assistant Gary Freeland found decreased range of motion and strength in her right shoulder and noted the claimant had not been attending physical therapy (Tr. 690). Dr. Charboneau indicated that the claimant must get back into therapy, was behind in her recovery, and would have discomfort since she was not working or using her arm (Tr. 690).

On January 13, 2015, the claimant presented to Dr. Mufti for evaluation of possible seronegative rheumatoid arthritis (Tr. 976-78). On physical exam, Dr. Mufti found tenderness of few scattered metacarpophalangeal and interphalangeal joints, fair grip, good range of motion in her shoulders, no forefoot squeeze tenderness, and multiple tender points for fibromyalgia (Tr. 978). He indicated that the claimant's pain was out of proportion to his physical examination findings (Tr. 978). At a follow up appointment on March 11, 2015, Dr. Mufti noted x-rays of the claimant's hands did not show any significant arthritis or erosive disease, but x-rays of her knees revealed advanced medial joint space narrowing with subchondral sclerosis (almost bone-on-bone deformity) (Tr. 970). He again noted the claimant's pain was out of proportion to physical exam findings, but found increased tenderness of a few metacarpophalangeal and interphalangeal joints, anterior tenderness in her shoulders, and crepitus in her knees with medial joint line tenderness (Tr. 970). He diagnosed the claimant with seronegative rheumatoid arthritis, end-stage osteoarthritis of the knees, and fibromyalgia (Tr. 971).

State agency physician Dr. Boatman completed an RFC assessment on January 26, 2015, and found the claimant could perform sedentary work with occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 114-15). Apart from his finding that the claimant needed to avoid concentrated exposure to humidity, Dr. Boatman's findings were affirmed on review (Tr. 127-30).

At the first administrative hearing in April 2013, the claimant testified that she was unable to work due to pain in her legs, feet, knees, hands, neck, hips, and lower back (Tr. 199). She stated that she experiences constant pain in her hands and that they swell every day (Tr. 200-01). She indicated that she could not use her left hand to pick up small objects but could hold a coffee cup and turn a door knob (Tr. 201-02). She stated that she could not open a two-liter bottle with either hand (Tr. 202). As to her knees, the claimant stated that she experiences constant pain in both knees and that her arthritis causes significant swelling daily (Tr. 203). The claimant further testified that the pain in her back, feet, elbows, and hips is reduced by frequently changing positions, but that she has a constant burning sensation in her feet (Tr. 204). The claimant stated that she did not get any relief from her shoulder surgery (Tr. 207). As to specific limitations, the claimant testified that she could sit for fifteen or twenty minutes, stand for ten or twenty minutes, walk half of a block to a block, and lift about ten pounds (Tr. 214-15). At the most recent administrative hearing, the claimant testified that the pain in her back and hips increased since the first hearing, but that the pain in her knees, hands, shoulder, neck, and feet was the same (Tr. 50-54). She further testified that she could still sit about fifteen or twenty minutes, and stand about ten or twenty minutes, but as of November 2015 could no longer walk up to a block (Tr. 62). She stated that she could still carry a gallon of milk with her left hand, but not with her right hand (Tr. 62).

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record. He discussed the consultative examiner reports, the imaging, as well as the treatment records from her physicians,

including Dr. Mufti, who did not begin treating the claimant until after her date last insured (Tr. 19-24). He concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the evidence of record, including examination findings as to her gait, her report to providers in November 2015 regarding her activities of daily living, her noncompliance with treatment after her shoulder surgery, her 2014 cervical spine x-ray, her repeated reports to providers that her medications helped alleviate her pain, her October 2014 right knee x-ray, and Dr. Mufti's note that her pain was out of proportion to physical examination findings (Tr. 19-24).

Nonetheless, the claimant argues that the ALJ did not properly account for her pain. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Here, the ALJ noted the times in the record when the claimant

complained of pain and exhibited pain upon examination, when she reported pain getting worse, and when she reported that it improved. Furthermore, the state agency physician's opinion that the ALJ ultimately adopted accounted for the claimant's use of a walker that no physician found medically necessary, and the ALJ included additional reaching and manipulative limitations of his own in the RFC. These findings indicate he properly considered and accounted for the claimant's pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. Here, "the ALJ provided specific reasons for his credibility determination on the testimony of the claimant . . . about the severity of [her] impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1138 (D. Kan. 2003). The ALJ thus applied the *Luna* factors to account for her pain. There is no indication here that the ALJ misread the claimant's medical evidence as a whole, and his evaluation of the claimant's pain is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

### Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 25th day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**